The People *v.* Gutchess.

THE PEOPLE OF THE STATE OF NEW YORK *vs.* IRA B. GUTCHESS and others, as petitioners, and RICHARD P. WATSON and others, as commissioners of highways of the towns of Mentz and Conquest, Cayuga county.

Where the legislature has asserted for the state the right to control a particular river, and has expressly declared it to be a public highway, by a public act, the state has the unquestionable right to control the use of the river, and to prevent the erection of any bridges or dams, or other works, which will obstruct the free use of the same as a public highway.

Whatever rights the public have in such a river, the authorities of the state are bound to protect, and a suit for that purpose is properly instituted by the attorney general, in the name of the people.

The public right in a river, upon the assumption that it is not navigable, in fact, is to be regarded simply as that of passage, as in a highway.

By declaring a stream a highway, the state does not acquire any title to the bed of the stream, or any higher or other right than it possesses in, or over ordinary highways upon the land.

If the state owns the bed of a river, or if it be a navigable river, in fact, then the law laid down in *The People* v. *The Canal Appraisers,* (33 *N. Y. Rep.* 461,) and *The Canal Appraisers* v. *The People, ex rel. Tibbetts,* (17 *Wend.* 571,) applies to it, and no one can lawfully construct a bridge over it, without the consent of the legislature.

The state government, in this particular, is the guardian of the rights of each and every citizen, which rights consist in an absolute and unqualified privilege, without let or hindrance, at all times freely to navigate any and every of the streams in the state, that is, at any season of the year, or at any stage of water therein, capable of navigation; and particularly so, if the legislature has by special act declared such stream a public highway.

The People *v.* Gutchess.

*Held*, in this case that, though the defendants, commissioners of highways, could not be permanently restrained from erecting a bridge over the *Seneca river*, as a free bridge, provided it could be constructed in such a manner as not to interfere with the free navigation of said river, if it should turn out upon the trial that the said river is not navigable, in fact, and that the state does not own the bed of the stream; yet that inasmuch as it was asserted on the part of the people that such river was a public navigable river, of the width of thirty-five rods, and of the average depth of eleven feet, and that the state owned the bed of the stream; and it appeared that the existing bridges across the river had been constructed under leave or authority from the legislature; the court ought, in behalf of the public interest, rather to assume that the state had the rights it claimed, till the truth could be otherwise established. An injunction was accordingly granted, to restrain the erection of the proposed bridge, until the hearing.

THIS action was brought to restrain the defendants, styled petitioners, from proceeding to obtain an order of this court to rebuild the so called free bridge over the Seneca river, which separates said towns, under the statute referred to in the opinion of the court. And to restrain the defendants, styled commissioners of highways, from erecting said bridge or executing any order that said petitioners may obtain secretly or otherwise, for that purpose. The complaint, among other things not appearing in said opinion, alleges that said commissioners of highways of the town of Conquest have never opposed said proceedings. That the predecessors in office of said commissioners of Mentz did, by Mr. Gillespie their counsel, oppose said proceedings until the present commissioners of highways of Mentz by resolution commanded said Gillespie and all other persons opposing the same to cease and desist therefrom. And that all of said defendants, styled commissioners, are suffering said proceedings to advance unopposed, and to go by default, and are acting in concert with said defendants, styled petitioners, to procure an order of this court for the rebuilding of said bridge, and taxation of said towns, by default, and threaten to execute the same under the shield of a color of right. That the bridge in question was originally built for the pur-

pose of a shunpike, by private individuals.    Other facts in the case sufficiently appear in the opinion of the court.

Upon the complaint and affidavits an order was granted directing the defendants to show cause at the special term of this court in Rochester, in June, 1867, why a temporary injunction should not be granted.

*J. H. Martindale,* (Att'y Gen.) and *Geo. B. Gillespie,* for the plaintiffs.  I. The Seneca river was navigable from the earliest settlement of the country, for boats, logs, and other craft, and now has navigable communication with the enlarged Erie canal at Baldwinsville, and unites with and forms the Oswego river, communicating with the Atlantic by Lake Ontario and the St. Lawrence river.  (*See vol.* 2, *Doc. Hist. of New York, pp.* 617, 675, 680, 685, 690.)

II. It is declared to be a public highway, by statute, which makes it a misdemeanor and punishable by indictment or otherwise to obstruct its navigation in any degree by building or erecting thereon any works.  (*R. L.* 1813, *vol.* 2, *ch.* 67, §§ 1, 2.)

III. Aside from the notorious fact of state reservation of title to the bed of said river in all the patents to individuals of land on its shores, the following acts of the legislature, among many others, permitting the building of bridges, free of toll, and dams across the same, towing paths, and locks upon its banks, expending large sums of money for dredging its channel and improving its navigability, from the earliest to the present time, in addition to the acts cited in relation to the Mohawk river (a more insignificant stream than the Seneca, 33 *N. Y. Rep.* 461–501,) furnish more abundant evidence of state ownership of the bed and control of the use of the water of this river than is ordinarily found.  (*R. L.* 1813, *vol.* 2, *chap.* 67, §§ 1, 2, *supra.   Laws of* 1836, *chaps.* 123, 191, 303.   *Laws of* 1837, *chap.* 294.   *Laws of* 1841, *chap.* 106.   *Laws of* 1843, *chaps.* 148, 180.   *Laws of* 1845, *chaps.* 30, 318.   *Laws of* 1846, *chap.* 469.   *Laws of* 1850,

*chap.* 283. *Laws of* 1853, *chap.* 524. *Laws of* 1858, *chap.* 179. *Laws of* 1862, *chap.* 465.)

IV. As matter of law the ownership of the Mohawk river, a navigable stream, and the title to its bed, is in the people. (*People* v. *Canal Appraisers*, 33 *N. Y. Rep.* 461 *to* 501. *People* v. *Tibbets*, 19 *id.* 528.) For identical reasons the Genesee river is within the operation of the above decisions.

V. The common law rules as to where lies such title is not applicable to this country. (*People* v. *Canal Appraisers, supra. Lowber* v. *Wells*, 13 *How. Pr.* 454.) Therefore the distinction on this point between the Hudson and Seneca rivers is effectually obliterated.

VI. It is conceded by the defendants that no consent of the legislature was ever obtained to build the proposed bridge, and such consent is necessary, 1st. Where the stream is navigable. 2d. Where the state owns bed of stream. (*Fort Plain Bridge Co.* v. *Smith*, 30 *N. Y. Rep.* 63.)

The plaintiff did not succeed in this case because *he* was not in a situation to demand an injunction. The people, in the case then before the court, by their proper officer, the attorney general, did object. The court in that case wished the common law principles restored that denied to the legislature the right to *impair* franchises granted. (*See page* 63, *opinion.*) Since that decision, the Supreme Court of the United States has gone far to establish this common law principle, by holding that a franchise to a bridge company is a *contract* which the state could not violate. (*The Binghamton Bridge*, 3 *Wallace*, 51 *to* 85, *citing Hargrave's Law Tracts, ch.* 11, 16. *The Enfield Toll Bridge Co.* v. *Hartford and New Haven R. R. Co.*, 17 *Conn. R.* 63. *Hooper* v. *Cummings*, 20 *John.* 100. *Bowman* v. *W———*, 2 *McLean*, 283.)

VII. Legislatures have power to license ferries and bridges, and no individual can without license build a bridge or establish a ferry for general travel; and every ferry ought to be under public regulation. (*The Binghamton Bridge, supra.*)

VIII. The states have the power to authorize the building

of bridges, and they always had it ; and it was not taken away by the federal constitution ; and when the revolution took place the people in each state became the sovereign, and in that character held *absolute right* to all the navigable waters, and *the soil under them.* (*Martin and others* v. *Waddell,* 16 *Peters,* 410.)

IX. So much regard is paid to the interests of the great body politic that if a river *ever has been* a public highway, even if it has not been used as such for a period of twenty years, and during the whole of the time has been in a condition inconsistent with public use, the *right* of the public is not extinguished. (*Angell on Water Courses*, § 254. *Vooght* v. *Winch*, 2 *Barn. & Ald.* 662. *See Commonwealth* v. *Inhabitants of Charleston*, 1 *Pick.* 180 ; *Inhabitants of Arundel* v. *McCulloch*, 10 *Mass. R.* 70.)

X. It matters not *how far* the erection would constitute an obstruction. (*Inhabitants of Charlestown* v. *County of Middlesex, supra.*)

XI. If the proposed bridge would not interfere with navigation, and would not be even a nuisance in fact, it would nevertheless be a *nuisance* and a *purpresture* in law. (*People* v. *Vanderbilt*, 28 *N. Y. Rep.* 396. *Waterman's Eden on Injunctions, vol.* 2, *p.* 259.)

XII. It would not help the defendants even if the bridge, on the whole, was a public necessity or benefit. (*Rex* v. *Ward*, 4 *Adolph. and Ellis*, 384. *Regina* v. *Betts*, 22 *Eng. L. and Eq.* 210. *Davis* v. *Mayor, &c. of N. Y.*, 14 *N. Y. Rep.* 525.)

XIII. If it interferes with a *public right*, the public advantages will not all be considered. (*Davis* v. *Mayor, &c. supra.*) It would be calling upon the court to usurp the powers of the legislature.

XIV. The attempt to erect this bridge is an effort to usurp a franchise ; because a bridge is a substitute for a ferry. (15 *Wend.* 133, *per Savage, J.*;) and the right to establish a ferry is a franchise, vested exclusively in the sovereign, and

no person can establish a ferry without sovereign authority. (*Ex parte Jennings*, 6 *Cowen*, 518, *note.* 5 *Seld.* 454, *per Selden*, *J.* *Blunt* v. *Hart*, *Willes*, 508. *Turnpike Co.* v. *Ryder*, 1 *John. Ch.* 611. *Newburgh Turnpike Co.* v. *Miller*, 5 *id.* 101. 3 *Kent's Com.* 10th ed. 459, *note.*)

XV. The fact that the bridge is designed to be free makes it no less a franchise. (*Angell & Ames on Corp.* § 4.) The exercise of any franchise without legislative sanction is an usurpation, and a *public nuisance*, and subjects the party to public prosecution. (5 *Seld.* 444, 445.)

XVI. But it is alleged in the answer that the plaintiffs are debarred by lapse of time.

The foregoing propositions being unquestionably correct, the proposed bridge, be it erected in any manner without sovereign authority, will be a nuisance in law or in fact, or both, if either. Then no lapse of time can prescribe for it. (*People* v. *Cunningham*, 1 *Denio*, 536. *Mills* v. *Hall*, 9 *Wend.* 315. *Weld* v. *Hornby*, 7 *East*, 199. *Roscoe Crim. Ev.* 739, 740. *The city of Rochester* v. *Erickson*, 46 *Barb.* 95.) And no laches can be imputed to the government, and against it no time runs, so as to bar its rights, in this behalf. (*Ang. on Water Courses*, § 254.)

Again ; prescription presumes a grant to some person. No person is named as grantee, and the proceedings we ask to enjoin are instituted for the purpose of ascertaining the putative father of this bastard erection.

XVII. The question of *ordinary* liability of towns to repair bridges built by individuals, and afterwards used by the public, is immaterial in this action.

XVIII. There is no act repealing expressly, or indicating any intention whatever to repeal, the act of 1813.

XIX. The report of the referee, and exhibits annexed, cannot be considered in this action. 1st. Because neither the statute nor the order of reference allow him to report any thing but the *evidence.* He assumes to report *facts.* 2nd. It is attempting to foist before the court for its consideration

the proceedings which are by the order to show cause enjoined—doing that indirectly which cannot be done directly.

XX. For the defendants to deny threatening to erect the bridge in question, when actually attempting to procure an order by default for that purpose, is idle. To deny the title and control of the plaintiffs of this river for the purpose of being temporarily rid of the equities of this bill is to belie the official history of this state ; to attempt to hide from the eye of this court that which it is legally bound to take judicial notice of ; and to ignore the latest adjudications of the highest judicial tribunals of this state and of the United States.

*H. V. Howland,* for the defendants. I. This bridge having been taken and used by the public for the purposes of travel, exclusively, the towns are bound to keep it in repair, without regard to who built it. It is a *public benefit.* The commissioners of highways have laid their roads from each town to the center of this bridge, and always used this bridge in connection with and as forming a *part* of the public highway. They are bound to keep it in repair, as much and to the same extent as though they had originally built it. The statutes of our state do not stop to inquire, or allow the commissioners to inquire, when a bridge used by the public for travel is swept away by floods, whether that bridge was originally constructed by the public officers, or whether there was not some technical defect in laying the road, by which they may escape liability. If it is a *public bridge, used as such* by the public, and no individual bound to repair, the liability of the officers to repair it is fixed. By our statutes it is provided (2 *R. S.* 381, *5th ed.,*) " The commissioners of highways *in the several towns* shall have the care and superintendence of the *highways and bridges* therein, and it shall be their duty to give directions for the repairing of the roads and *bridges* within their respective towns, and to cause

The People *v.* Gutchess.

the highways and bridges which are or may be erected over streams *intersecting* highways, to be kept in repair."

If this bridge *intersects* a highway, and is used as a part of the public highway, it matters not by whom it was erected, the town officers are bound to keep it in repair. (*The King* v. *The Inhabitants of the West Riding of Yorkshire*, 2 *East*, 342, 347, &c. *Heacock* v. *Sherman*, 14 *Wend.* 59, citing 2 *East*, 342, *supra. Dygert* v. *Schenck*, 23 *Wend.* 445.)

II. Is *legislative authority* necessary, in this case, to authorize the erection of this bridge across this stream ? We maintain it is not. There are three cases when legislative authority is necessary to erect a bridge over a stream. 1st. *Where the stream is navigable.* This is not. 2d. *Where the state owns the bed of the stream*, and 3d. *Where the right to take toll is denied.* And where the state owns the bed of the stream, no person has a right to use it, without its consent; but at the same time no person has a right to object, except the officers of the state. (*The Fort Plain Bridge Company* v. *Smith*, 30 *N. Y. Rep.* 44.) Now, admitting this Seneca river to be a navigable river, (which it is not, as the referee finds,) and a highway, what are the rights of the parties in relation to it ? Have they a right to erect a public bridge to cross this river, if they can do so without obstructing it, or depriving the state or the public of its legal occupancy of this river ? We maintain they have. (*Palmer* v. *Mulligan*, 3 *Caines' R.* 313.) This bridge was useful to the public, and had been *dedicated* to their use, and they are bound to repair (*Angell on Highways and Bridges*, § 104.)

E. DARWIN SMITH, J. The plaintiffs ask for an injunction against the defendants, who are commissioners of highways of the towns of Mentz and Conquest, in the county of Cayuga, restraining them, as such commissioners, from erecting or rebuilding a bridge across the Genesee river, which separates the said towns. The complaint alleges that a previous bridge

had been erected, some twenty years since, in the same place, and kept up until it was carried away by a freshet, in 1865, and alleges that such bridge was erected without any authority from the legislature; that said river is a public navigable river; that the state owns the bed of the stream, and that the erection or rebuilding of the proposed bridge is not authorized by any legislative act, or in any way allowed by the state authorities. The complaint further alleges, that the Seneca river is about thirty miles in length, and is of an average width of about thirty-five rods, and of an average depth of about eleven feet, and has navigable communications from Lake Ontario to Schenectady, and runs through a thickly settled country and near a number of villages; that its banks are lined with large quantities of timber; and that the state has expended large sums of money, from time to time, in dredging its channel and in improving its navigability. The complaint further alleges, that said bridge, if constructed, will be a nuisance and a purpresture, in fact and in law, as well as a violation of the act of the legislature passed April 2d, 1813, declaring said river to be a public highway, and making it a misdemeanor to obstruct it by any erections or works in its bed or on its banks; and it further alleges, that said bridge will necessarily dam up and obstruct the navigation of said river, and hinder and delay, if not entirely obstruct, the plaintiffs in the exercise of their rights to freely navigate said river, and would also necessarily amount to an usurpation of a franchise which can only be conferred by the legislature.

The answer of the defendant denies substantially most, if not all of the essential facts stated in the complaint. It denies that the Seneca river is a navigable river; denies that the state owns the bed of the stream; denies that the proposed bridge will be any obstruction to said river or its navigation; and denies that it will be a nuisance or purpresture; and insists that the defendants have a lawful right as commissioners of highways to lay out a highway, and erect a bridge across said river.

The defendants annex to their answer the report of C. C. Dwight, Esq. a referee in proceedings in this court relative to said bridge, under the act, chapter 639, passed April 16, 1857, in which the said referee finds and reports that said river was declared a public highway by act of the legislature in 1813, and in the early settlement of the country was occasionally navigated in seasons of high water by rafts and boats of small size ; but that it had not been navigated for many years, and is not now a navigable stream. This report, I presume, states the truth substantially in respect to this river, and, connected with the defendants' answer, substantially denies and disproves the equity of the complaint.

It appears from this report that there are already erected and in use twelve bridges across said river, at an average distance of about three miles from each other, throughout its entire length. I cannot see, therefore, why or how the bridge which the defendants propose to construct across said river, will particularly add to the obstruction already existing to its navigation.

Upon these facts, if this report was properly before me and had any judicial force in this proceeding, I should be inclined to deny the injunction entirely, upon the ground that the equity of the bill was denied ; but I think I cannot give any force to this report, as against the state, and I cannot overlook the fact that the legislature has asserted for the state the right to control said river, and has expressly declared it to be a public highway, by a public act, and that the bridges aforesaid, erected over said river, have been so erected upon leave or license from the state.

The state has, therefore, the unquestionable right to control the use of the river and prevent the erection or creation of any bridges or dams, or other works which will obstruct the free use of the same as a public highway.

Whatever rights the public have in this river, the authorities of the state were bound to protect, and this suit is properly instituted for that purpose. But the public right in this

river, upon the assumption that it is not navigable in fact, is to be regarded simply as that of passage, as in a highway, as was said by this court in *Ex parte Jennings*, (6 *Cowen*, 537,) in reference to Chittenango river, " is one of passage, and nothing more, as in a common highway. It is a mere *easement*, and the proprietor of the land on the banks has a right to use the land and water of the river in any way not inconsistent with the easement. If he makes any erection rendering the passage of boats inconvenient or unsafe, he is guilty of a nuisance, and this is the only restriction which the law imposes upon him."

By declaring a stream a highway, as in this case, and as has been done with most of the streams of this state, which could, at any time and in any stage of the water, be navigated with rafts, floats, or small boats, the state does not acquire any title to the bed of the stream, or any higher or other right than it possesses in or over ordinary highways upon the land. But in respect to all fresh water streams which are navigable in fact, like the Niagara, the St. Lawrence, the Genesee, and Oswego below the falls ; in those rivers the rights of the public are very different. Such streams are public, and belong to the state, as much so, doubtless, as the Hudriver where the tide ebbs and flows, and as much so as the great lakes in the interior of the state. But this doctrine cannot, in my opinion, have any further extension. The rule of the common law in respect to highways and fresh water streams not navigable in fact, is too firmly established in this state to be changed or uprooted, except by a constitutional amendment, declaring that the provision in the constitution of 1777, which declares that " such parts of the common law of England and the statute law as did together form the law of the colony on the 19th day of April, 1775, shall continue the law of this state," be repealed, or shall not be construed to apply to water courses and highways.

Rivers navigable in fact, in all countries, belong to the public. This is so by the common law, by the civil law, and by the

French code. Such streams, in the nature of things, are incapable of private appropriation, or if otherwise, any and every private appropriation of them is utterly inadmissible. But the rule does not apply where the reason ceases, and where the public interest on the contrary requires that private property should exist, and private rights be allowed, recognized and maintained for the public good. There is no reason, in fact, why the state should own the bed of the small streams utterly unnavigable, except in a time of high water, and then only with rafts and logs, and small flat boats; but sound reason and the public interest is all the other way.

The state doubtless may retain the bed of streams when it has the title, and by grant or patent in express terms has bounded the grantee by the shore as it did, or is claimed to have done, with the Mohawk river. In such case, as the primary source of title, it grants what it pleases, and conveys no more. In *The People* v. *The Canal Appraisers*, (33 *N. Y. Rep.* 461,) it has been recently held that the state owns the bed of the Mohawk river. The same view was taken in *The Canal Appraisers* v. *The People ex rel. Tibbits*, (17 *Wend.* 571,) in respect to this Mohawk river. In that case Judge Beardsley says, p. 608 : "That the patent did not include the bed of the river, or the islands." He said that "the evidence most conclusively establishes that not only the colonial government but the state authorities have considered the bed of the Mohawk as belonging to the public."

If, therefore, the state owns the bed of the Seneca river, as is asserted in the complaint in this case, the law of those cases applies to it, and no one can lawfully construct a bridge over it without the consent of the legislature. But if the right of the state in this river, or its right to control it, depend entirely upon the simple assertion by the legislature that it is a public highway, then the defendants, I think, are entitled to lay out a highway and build a bridge across the said river, unless they proposed to take toll, which would be a franchise that must be granted by the legislature. It is not

alleged that this is proposed or intended. If it be a navigable river in fact, they could not lawfully build such bridge without leave of the legislature, or if the state owns the bed. This is asserted in the case of *The Fort Plain Bridge Co.* v. *Smith*, (30 N. Y. Rep. 63,) and is undoubtedly the law of this state.

In many cases the legislature has granted the privilege to construct dams in, and to erect bridges over streams declared like this river to be public highways. This saves such erections from indictment and abatement as public nuisances ; but is not otherwise necessary or of any importance. The numerous bridges erected by the local authorities over such streams, in all parts of the state, have not, I think, generally been authorized by special acts of the legislature. Bridges in most cases, I think, have been erected whenever the public convenience or necessity has required them, without doubt or question in respect to their lawfulness. But all such erections must undoubtedly be made at the peril of the parties making them.

The state has, I think, the undoubted right to forbid such erections, and to abate them when made, if they will or do in any degree obstruct the navigation of the streams over which they are erected.

The state government in this particular is the guardian of the rights of each and every citizen, which rights consist in an absolute and unqualified privilege without let or hindrance at all times freely to navigate with boats, rafts, logs or any other mode of water conveyance any and every of the streams in the state that is at any season of the year, or at any stage of water therein capable of navigation, and particularly so if the legislature has by special act declared such stream a public highway.

While therefore I think the defendants cannot be permanently restrained from erecting the proposed bridge as a free bridge, provided it can be constructed in such a manner as not to interfere with the free navigation of said river, if it

The People *v.* Gutchess.

shall turn out upon the trial that the said river is not navigable in fact, and that the state does not own the bed of the stream ; yet I am inclined to think upon the whole that inasmuch as it is asserted on the part of the people that this is a wide stream, of the width of thirty-five rods, and of the average depth of eleven feet, and it is also asserted that the state owns the bed of the stream ; and it also appears that the bridges heretofore erected across it have been constructed under leave or authority from the legislature ; that I ought in behalf of the public interest rather to assume that the state has the rights it claims till the truth can be otherwise established, and restrain the erection of the proposed bridge till the hearing.  And it is so ordered, with costs to abide the event.

[MONROE SPECIAL TERM, June 24, 1867.  *E. Darwin Smith*, Justice.]