JUDSON B. FLETCHER *v.* SAMUEL PHELPS AND BENAJAH
PHELPS.

*Lands bounded on lakes and creeks.*

Lands bounded on Lake Champlain extend to the edge of the water at low water
mark. The same rule applied, in this case, to lands near the lake bounded on a
creek emptying into, and the waters of which ordinarily maintain the same level,
and rise and fall with those of the lake; there being no claim made that the
boundary should extend to the centre of the creek.

18

ASSUMPSIT, founded upon a written agreement of the defendants to pay the plaintiff twenty-two dollars for each acre of a farm of land in South Hero, deeded by the plaintiff to Samuel Phelps and George Phelps. Plea, the general issue; trial by jury, August Term, 1854,—PECK, J., presiding.

The land deeded to Samuel and George Phelps was described in the plaintiff's deed as the south part of lot No. 88, bounded north by Abner Keeler's land, east by the lake and the creek, south by lands of Gardner Tracy, and west by lot No. 89. The only question in dispute was in reference to the eastern boundary of this lot, the plaintiff claiming it to be a line indicated, on a plan of the premises, as the Fletcher survey; and the defendants claiming it to be a line further west, indicated on the plan as the Phelps survey;—between these two lines it was admitted that there was a space of five acres and one hundred and fifty-two rods of land; the line claimed by the defendants being near the eastern border of the hard land, corresponding with the line of bushes hereafter mentioned;—and the line claimed by the plaintiff being near the western bank of the channel hereafter mentioned, which he claimed was the creek proper;—no part of said channel being included in the five acres and one hundred and fifty-two rods. The plaintiff's testimony tended to show that there was a creek which connected with the lake near the north side of the land in question and extended southwardly about two miles; and that, opposite the premises in question, it was about sixty or seventy rods wide in high water, gradually growing narrower as you proceeded south; that in the middle of the summer there was but very little water in the creek, and that confined to the channel near the centre; that in the centre there was a channel from one to two rods wide, varying in width in different places, and somewhat crooked; that this channel was a little lower than the surface of the land on each side; that no vegetation grew in the channel, and that the five or six acres in dispute lay between the hard land west, which was skirted by a line of bushes or small trees and this channel, and that it lay low, nearly on a level with the lake, and was covered with water, from the lake, every spring, till sometime in June; that from 1810 to 1816 it was a quagmire, of no value and capable of no use or occupancy; and that it was not used for any purpose until 1816,

when some wild oats and other vegetables began to grow there, and that it had.been gradually filling up and improving ever since; that the occupants of the hard land on the west had occupied this low tract in question in connection with the hard land, whenever the low land was susceptible of occupation.

The defendant offered to show that, by the original allotment of the town, the lots were sixty-four acre lots; that the lot in question measured down to the east border of the hard land seventy acres; that the land in dispute was navigable for vessels, every year, by water setting up from the lake; and that it was covered with musk-rat houses; and that after the water in the lake fell, and about mid-summer, cattle strayed on the land in question,—but that no vegetation grew on it, except such as was about worthless and was not used except in years of great scarcity of hay, and in such cases a great portion and most of the fodder cut on it was flags and bull-rushes; that the land itself rose and fell more or less with the rise and fall of the water of the lake; that the surface of the land in the lowest water was never a foot above the surface of the water in the lake; that the land was susceptible' of no cultivation, and that teams never had been and never could be driven upon it; that this whole strip of land had always been known and called "the creek," by people of the vicinity; that there were no distinct banks to the channel of the creek, but that what the witnesses on the part of the plaintiff called the channel was a narrow strip in the middle of this low creek land, in which no vegetation whatever grew; that it was slightly depressed in the centre and gradually rose to the edge of the low tract in question, where vegetation, such as described, grew, and from that point to within one or two rods of the hard land it was entirely level, and that from there, for a rod or two, it gradually and slightly ascended to the hard land; that the creek and creek land extended in length about one and a half or two miles south of the land in question, gradually growing narrower at the south end, and connecting with the lake only at the north end; that the rise and fall of the water in the creek was caused by the rise and fall of the water in the lake; and that the water in the creek came wholly from the lake, except the surface water from the adjoining land in time of rains, and some small springs upon and above the land in question, which were

drained off in the dry portion óf the season through the channel of the creek.

The defendant offered to show in what manner the continuation of this strip of land had been regarded and treated by the owners of the adjoining lands in their occupancy of it, and by reference to their conveyances of the adjoining lands, and the records of divisions of it, and what conversation was had by the plaintiff both at the time of, and subsequent to the making of the contract and conveyance in question.

There was no evidence offered, nor was it claimed by the defendants, that the land in dispute was ever set to any other lot than the one bounding on it on the west,—or that it was ever occupied or claimed by any one else than the occupants of the lot deeded; but the defendants did claim that it was not set in the allotment of the town, (which was many years ago,) to said lot. It appeared that there was, in the allotment of the town, a tier of lots on the west side of the creek, but no plan or survey of the town was introduced to show whether the lots bounding the creek run to the channel of the creek or not.

The evidence offered by the defendants was objected to by the plaintiff, and the court excluded it, as having no tendency to show that the tract in dispute ought to be excluded in the estimate of the of the price of the land; to this the defendants excepted, and thereupon submitted to a verdict under the direction of the court to the jury to include the land in dispute in estimating the aggregate price of the land to be paid for under the contract.

*G. Harrington* for the defendants.

*H. R. Beardsley* for the plaintiff.

The opinion of the court was delivered, at the circuit session in September, by

ISHAM, J. The question in this case is one of boundary. The matter in dispute is determined by ascertaining the eastern line of the lot which was conveyed by the plaintiff to George and Samuel Phelps, by his deed of May 4, 1850. The question becomes important in order to determine the number of acres embraced in the

deed, for which the defendants are to pay the plaintiff, per acre, the price stipulated in their contract. The lot is described in the deed as being bounded on the "*lake and the creek.*" The plaintiff insists that the creek is limited to the crooked line, *or the Fletcher survey,* as marked on the plan, and that all the land west of that line should be measured to ascertain the number of acres contained in the deed. The defendants, on the other hand, insist that no land was conveyed by the deed any further east than the dotted line or Phelps survey, as indicated on the plan, which runs on the border of what is termed the hard land, thus excluding the low land lying east of that line. The land thus excluded appears to be low land lying but little above the surface of the lake, and consequently is so much inundated in times of high water that it is rendered of no use for cultivation, and of no great value for pasturage or meadow. The quantity of land in dispute is five acres and one hundred and fifty-two rods; for which the plaintiff seeks to recover, in this action, the price stipulated to be paid per acre for the whole farm. The court excluded the evidence offered by the defendants, and directed the jury to include the land in dispute in estimating the aggregate price of the land under the contract; thus establishing the eastern boundary of the lot as being on the Fletcher survey, but not so as to embrace any part of the channel of the creek. We are satisfied that the defendants have no reason to complain of that direction of the court to the jury.

As a general rule, if the description of the land in a deed is ambiguous or doubtful, or if the lines and monuments referred to are lost or destroyed, parol evidence of the practical construction given by the parties, by acts of occupancy, recognition of monuments or boundaries, is admissible for the purpose of identifying the land, and in aid of the interpretation of the deed. *Stone* v. *Clark,* 1 Met. 378; *Waterman* v. *Johnson,* 13 Pick. 261; 1 Greenl. 301, note. But when no ambiguity exists, and the parties, in describing the land, have used terms and language in the deed, referring to known, existing, and permanent monuments, it is the duty of the court to give to the description and the language of the parties a legal construction; and parol evidence is no more admissible to control its legal effect than it is of any other stipulation of the parties contained in the deed. It is for the court, in such cases,

to decide what is embraced in the deed, and to definitely determine
its lines and boundaries. Where land is sold and bounded on a
river or stream of water above tide-water, the grant extends to the
middle of the channel or thread of the stream. That is the legal
effect of the conveyance, and it cannot be varied or controlled by
parol testimony. *Tyler* v. *Wilkenson*, 4 Mason 397 ; *Claremont* v.
*Carelton*, 2 N. H. 369 ; *Hooper* v. *Cumings*, 20 John. 91 ; Angel
on Water Courses, § 11–12, and notes. The same principle ap-
plies where land is bounded upon an artificial pond, as a mill-pond
and the like. *State* v. *Gilmanton*, 9 N. H. 461 ; *Hathorn* v. *Stin-
son*, 1 Fairf. 238. But a different rule prevails where land is con-
veyed bounded on large natural ponds or lakes ; in such case, the
grant extends to the water's edge, or if, as observed by CH. J.
SHAW, in *Waterman* v. *Johnson*, 13 Pick. 261, the lake or pond
have a definite low water line, the grant will extend to low water
mark. *Canal Commissioners* v. *People*, 5 Wend. 423 ; *State* v.
*Gilmanton*, 9 N. H. 461. Such is the legal effect which is given
to conveyances of that character.

In relation to the premises in question, so far as they are bounded
on the lake, no difficulties have arisen between these parties. The
line extends to the edge of the water at low water mark. The
same rule, we think, should be applied to land bounded on this
creek. In times of high water on the lake, this creek appears to
be but little more than an arm or inlet of the lake itself, as the rise
and fall of the water in the creek depends upon the rise and fall of
the water in the lake. There is a small rivulet or stream which
passes through the centre of this low land to the lake, when it is
not overflowed, the bed of which is distinguished by being some
lower than the rest of the low land. At low water on the lake,
the stream is limited to this channel, and is, to some extent, sup-
plied with water from inland springs. Whether the measurement
of the farm should have been extended to the centre of that
stream or not, is not the question before us, as the court limited the
line to the bank of the stream at low water, to which the plaintiff
has taken no exception. That the line of this lot, as given in the
deed, extends to the bank of that stream, and that all west of that
line should be included in the measurement in ascertaining the
number of acres in the farm, we have no doubt, as it was land

conveyed by the deed, the title to which passed to the grantees, and for which, if the plaintiff had withheld the possession, the defendants could have sustained the action of ejectment. That part of the evidence which was offered by the defendants in relation to the character and quality of the land in dispute, was, therefore, properly rejected.

The same principle will exclude the evidence offered in relation to the original allotment of the land, the sale of contiguous land and its occupancy by others, the records of division, and the conversation of the parties at the time of the conveyance, &c. *The lake and the creek* mentioned in the deed are existing and natural monuments, and when called for by the deed, control quantity, lines, courses and distances;—as monuments of that character afford the highest and best evidence of the intention of the parties. *Howe* v. *Bass*, 2 Mass. 380; *Wendall* v. *Jackson*, 8 Wend. 190; *Butler* v. *Widger*, 7 Cowen 723; *Rich* v. *Rich*, 16 Wend. 663; 3 Phil. Evid. by Cowen & Hill 1379; 1 Greenl. Ev. § 301, note. Those monuments, therefore, must control the legal effect of this grant; and parol evidence is inadmissible to establish other boundaries, as there is no ambiguity in the deed, nor any uncertainty as to the monuments referred to. We see no error in the ruling of the county court on this subject.

The judgment of the county court is affirmed.