[No. 5680. Decided October 21, 1905.]

R. MADSON et al., Respondents, v. SPOKANE VALLEY LAND AND WATER COMPANY, Appellant.[1]

WATERS — IRRIGATION — WRONGFUL DIVERSION — ESTOPPEL OF LITTORAL PROPRIETOR—FAILURE TO OBJECT TO OPERATIONS ON LANDS OF OTHERS. The fact that a littoral proprietor upon the arm of a lake stood by without objection during the construction of a dam for irrigation purposes, erected at great expense, cutting off his property from the main body of the lake and draining his premises, would not amount to an estoppel preventing him from objecting to the diversion of the waters by the closing of head gates so as to leave no water on his premises, where no act was done or admission made intended to influence or encourage the construction, which was entirely upon the lands of others.

NAVIGABLE WATERS—WHAT ARE. A small lake of the average depth of eighteen feet, having no navigable inlet or outlet, upon which a small steamer is run for hire during the camping season, is navigable within, Const., art. 17, § 1.

SAME—TITLE BY PATENT PRIOR TO ADOPTION OF STATE CONSTITUTION—LITTORAL RIGHTS. The vested rights of a littoral owner upon a navigable lake, under a patent issued prior to the adoption of the state constitution, to the uninterrupted use of the water in its natural flow or condition, continues unimpaired by the constitution, and cannot be divested except under the power of eminent domain upon the making of compensation; and it is immaterial whether the water flowed from, or stood upon, the land.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered March 30, 1905, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, enjoining the diversion of waters

1Reported in 82 Pac. 718.

and the use of a dam by an irrigation company, and directing the commencement of proceedings to condemn plaintiffs' littoral rights within sixty days.    Affirmed.

*James T. Burcham* and *Happy & Hindman,* for appellant.
*Gallagher & Thayer,* for respondents.

MOUNT, C. J.—This action was begun by respondents, to recover damages and to restrain the appellant from maintaining a dam across an arm of Liberty lake in Spokane county. On the trial of the case, the court below entered an order enjoining the use of the dam, and directing appellant within sixty days to commence an action for the condemnation of respondents' littoral rights in and about the arm of the said lake extending upon the respondents' premises.    From that order, this appeal is prosecuted.

The facts agreed to upon the trial are substantially as follows:    Liberty lake is a body of water averaging about three-fourths of a mile in width, about one and three-fourths miles in length, and of an average depth of eighteen feet. There is no navigable inlet or outlet to this lake.    To the northwest from the main body of the lake, an arm of the lake extends over and across lands owned by respondents. These lands were acquired by a patent from the United States in October, 1886, before the adoption of the state constitution.    No part of this arm of the lake lying upon respondents' land has ever been navigable for any purpose. The appellant, or its predecessors in interest, in the year 1899, entered upon the arm of the lake to the east of re- spondents' lands, between said lands and the main body of the lake, and constructed a dam across said arm and erected head gates therein, and to the west of respondents' lands constructed a canal from the arm of the lake to lands to be irrigated.    The effect of the dam and the said canal is to withdraw the water of Liberty lake entirely from respond- ents' premises, so that respondents' access to the water on their land has been entirely destroyed, except for water which

is permitted to run through the head gates during the irrigating season. The said dam and canal of the appellant were completed in the spring of the year 1903. In constructing said dam and canal and head gates, the appellant spent large sums of money, aggregating about $50,000. The respondents had knowledge that appellant was doing said work and, after the completion thereof, respondents, in the year 1904, cultivated three acres of the land drained by said canal. The appellant and its predecessors in interest have, at all times herein mentioned, been an irrigation company, under the laws of this state, and have appropriated the waters of Liberty lake for purposes of irrigation, and have actually been furnishing water for irrigation of lands since 1901. It is now under contract to furnish water for irrigating six hundred and forty acres.

Appellant makes two contentions upon this appeal, as follows: (1) That respondents by their conduct have lost all right to any relief on the ground of estoppel, or, if not to all relief, at least to injunctive relief, and on this last assumption should have been granted only damages for trespass; (2) that, under the laws of this state, the respondents have no legal right to have the waters of Liberty lake remain in their natural condition, and hence any harm they may have suffered by the withdrawal of the water from their riparian land was *damnum absque injuria.*

Upon the first question, the only facts which in any manner tended to create an estoppel are that the respondents knew that appellant was building the dam, and constructing the head gates and canal, and expending large amounts of money, and that the next year after the works were completed respondents cultivated about three acres of the land drained by said canal. None of the work of building the dam or head gates or canal was upon respondents' lands and it is not shown that respondents knew that these structures would entirely drain the water from their lands. It is fair to presume, in the absence of such showing, that respondents

supposed the head gates were so arranged, or would be so arranged, as to leave the water upon their lands in its natural condition and work no damage to respondents. This court, in *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, in discussing this question, quoted with approval the definition of estoppel as laid down in *New York Rubber Co. v. Rothery,* 107 N. Y. 310, 14 N. E. 269, as follows:

"To constitute it [an estoppel] the person sought to be estopped must do some act or make some admission with an intention of influencing the conduct of another, or that he had reason to believe would influence his conduct, and which act or admission is inconsistent with the claim he proposes now to make. The other party, too, must have acted upon the strength of such admission or conduct."

None of the elements of estoppel, as thus defined, are found in this case. Respondents are not shown to have done any act, or made any admission, which influenced, or was intended to influence, the appellant to construct the dam or head gates or canal where they were constructed. If the work had been done upon respondents' lands, and they had stood by and encouraged the same by making no objections thereto, a different condition would have existed; but the work was done upon lands belonging to others, where respondents had no right to object, and where appellant no doubt had a right to be. The mere fact that respondents knew that appellant was constructing its dam, ditches, and head gates, was no notice to the respondents that appellant would damage or take lands for the purpose of using such improvements without first paying for such damages or lands. The case of *Rigney v. Tacoma Light & Water Co., supra,* fully discusses the point here made, and is decisive of this case upon the question. The fact that respondents, after the damage had been done, attempted to utilize a part of the land, did not amount to a waiver of their right to maintain the action.

The ground of the second contention is, that Liberty lake is a navigable lake, the title to which is in the state, and that, by the laws of this state, littoral owners on navigable waters of the state have no legal rights to those waters, as an incident to their estate; that, although this arm of the lake which extends across respondents' land is not navigable, the same rules must be applied as if the respondents' lands abutted on that part of the lake which is navigable. In reference to the navigability of the lake proper, the following facts were stipulated:

"That the lake mentioned in the pleadings as Liberty lake is a body of water of the average width of about three-fourths of a mile, and the lake being about a mile and three-fourths in length and of an average depth of eighteen feet last year. That for several years last past there has been running on said lake a pleasure steamer that will carry about fifty passengers, and that said passengers are carried for hire during the camping season, said boat being propelled by steam. There are no cities or villages upon the lake, and the lake has never been used for business or commercial purposes, except as above stated, and there is no navigable inlet or outlet to the lake. That there is one hotel upon the east side of said lake, and one hotel on the west side of said lake, and one store, a general merchandise store, on the north side of said lake, being a small grocery store. The hotels are open only during the camping season in the summer."

There can be no reasonable doubt that this lake, as above described, is navigable in fact and falls within the provisions of § 1, art. 17, of the state constitution; but, in our opinion, the fact that the lake is a navigable body of water makes no material difference in this case. The title of respondents to their land was acquired from the United States prior to the adoption of the state constitution, which reserves the vested rights of the respondents. The irrigation act, under which appellant was organized, also provides that the right to take water for irrigation is "subject to rights existing at the time of the adoption of the constitution of this state." Laws 1899, p. 261. When it is conceded, as it is in this case, that

the respondents were in possession of the land, holding patent from the United States prior to the adoption of the constitution, the littoral or riparian rights which respondents then enjoyed continued thereafter unimpaired.  These rights are presumed to be valuable rights.  They may have been the principal considerations for the purchase of the land from the government.  These rights can only be taken away when necessary for a public use, upon due consideration.  This point in this case is fully covered in *New Whatcom* v. *Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190, where this court said:

"The right of the state over the waters of Lake Whatcom is such as pertains to sovereignty alone.  That is the right to use, regulate, and control these waters as a common highway for commerce, trade, and intercourse, and to grant the soil in the bed of the lake, so that it might become private property, subject to the paramount right of public use for navigation.  In short, that the rights of the state in the navigable waters thereof are the same rights as pertained to the sovereign at common law in the sea, its bays, arms, and inlets.  But conceding that by art. 17, § 1, of the constitution absolute ownership is now in the state, so that the state can dispose of the waters as well as the soil, the vested rights of the respondent, notwithstanding, are preserved to it. That is the right to the use of the water in its natural flow as it existed before the adoption of the constitution, when the United States granted to Russell V. Peabody, under the 'Donation Act' the land over which Whatcom creek flows, of which the lands of the respondent are a part. . The constitution having reserved to the respondent its vested rights, the legislature, except under the power of eminent domain, upon making compensation, could not divest it of that right, either directly or indirectly, for a public or private use."

The case from which this quotation is made is similar in all essential particulars to the case before us, and is in point. The principal difference in the two cases is that in this case the water which stood upon respondents' land is an arm of the lake without a natural outlet, while in the *New Whatcom* case the water flowed from the land in a natural stream over

respondent's land. But the rights of the respondents in both of the cases are identical, viz., the uninterrupted use of the water in its natural flow or condition upon his land.

Under these considerations, the judgment of the lower court was right, and is affirmed.

DUNBAR, HADLEY, CROW, ROOT, and RUDKIN, JJ., concur.

FULLERTON, J., took no part.