[No. 11090.  Department One.  September 17, 1914.]

JOHN BERNOT, *Appellant*, v. PETER MORRISON *et al.*,
*Respondents.*[1]

PLEADING—COMPLAINT—DEFINITENESS. In an action to enjoin
interference with the bed of a lake, in which the state intervened,
claiming ownership, it was proper, on motion therefor, to require
the complaint in intervention to be made more specific with refer-
ence to the character of the lake, it having failed to allege whether
it was navigable or not, even though the state might claim the bed
of the lake under either condition, since by failure to allege either
condition, there was, in effect, a plea of contradictory facts, violat-
ing the code rule that the complaint shall contain a plain and con-
cise statement of facts constituting the cause of action.

WATERS AND WATER COURSES—UNNAVIGABLE LAKES—TITLE TO
BEDS. Title to the beds of unnavigable lakes is not, and never has
been, in the state, in view of the construction, as applied in prior
decisions of Rem. & Bal. Code, § 143, declaring the common law to
be the rule of decision in the courts of this state, so far as not in-
consistent with the constitution and laws thereof and of the United
States, and the enabling act, 25 Stat. at L., p. 681, which in specify-
ing the lands which shall pass to the state upon its admission into
the Union, not including, expressly or by implication, unnavigable
lakes, but providing "that the state shall not be entitled to any
further or other grants of land for any purpose than as expressly
provided in this act," the state recognizing the conditions therein
by its disclaimer, in Const., art. 26, of all right and title to the un-
appropriated public lands within the boundaries of the state, upon
its admission to the Union.

WATERS AND WATER COURSES—UNNAVIGABLE LAKES—DIVERSION—
ACTIONS—RIGHTS OF STATE. Although the state holds no title to the
bed of unnavigable lakes, it has, by reason of its sovereignty, as
between itself and the United States, an interest sufficient to main-
tain an action against an intruder without title.

NAVIGABLE WATERS—RIPARIAN RIGHTS—GRANTS — CONSTRUCTION.
The effect of a grant of land on the title to adjoining submerged
lands will be determined by the law of the state in which the land
lies, the United States assuming the position of a private owner
subject to the general law of the state, so far as its conveyances are
concerned.

[1] Reported in 143 Pac. 104.

WATERS AND WATER COURSES—UNNAVIGABLE LAKES—TITLE TO BEDS.
The common law (Rem. & Bal. Code, § 143), being the rule of decision
in the state as affecting unnavigable waters in streams and lakes,
title to the bed of an unnavigable lake is in the patentees of lands
bordering thereon, the declaration in Const., art. 21, § 1, that "the
use of the waters of the state for irrigation, mining and manufactur-
ing purposes shall be deemed a public use," never being intended to
destroy riparian rights in unnavigable waters; and Laws 1890, p.
706, relating to appropriation of waters for irrigation, and the act
of Congress of March 3, 1877, relating to the reclamation of desert
lands and the use of water thereon by prior appropriation, contain-
ing nothing therein abrogating the common law rule touching lit-
toral and riparian rights in unnavigable waters.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered October 28, 1912, in favor
of the defendants, upon sustaining demurrers to the com-
plaints, in an action for equitable relief. Affirmed.

*W. C. Jones* and *Wicks, Chamberlain & Quackenbush,* for
appellant.

*Reese H. Voorhees,* for respondents.

*The Attorney General* and *R. E. Campbell, Assistant,* for
intervener.

ELLIS, J.—For a statement of the controversy leading up
to this litigation, and the facts as to the character and con-
dition of the lake involved, reference is made to the opinion
of this court in *Morrison v. Bernot,* 58 Wash. 302, 108 Pac.
772. After that action was dismissed, the plaintiff brought
the present action to enjoin the defendants, littoral pro-
prietors, from interfering with him in the prosecution of his
plan for using the bed of the lake as a storage basin for
water for irrigating his non-littoral lands. The state of
Washington intervened, claiming to own the bed of the lake,
and praying that its title be quieted. The court sustained
demurrers both to the plaintiff's complaint and the state's
complaint in intervention. The plaintiff, and the state as
intervener, have appealed. We shall refer to the parties
throughout as plaintiff, intervener and defendants. Omit-

ting caption, conclusion and prayer, the plaintiff's complaint alleges:

"(1)   That Saltese lake is a natural body of fresh water situate in Spokane county, of about fourteen hundred acres in extent as surveyed and meandered by the government of the United States about the year 1879, when the public lands of the United States, upon which it was situated, were surveyed, and constitutes a natural reservoir for the storage of water for the purpose of irrigation, manufacture or mining, and before such surveys were made, *it had been set apart and appropriated by the government of the United States by an act of Congress of date, March 3, 1877, for such purposes and ever since has been so set aside and dedicated by said act of Congress and by the laws of the territory and state of Washington, to such uses, and has always been open to appropriation by the citizens of the territory and state of Washington for such purposes.*

"(2)   That plaintiff is and at all times hereinafter mentioned was, a citizen of the United States, and for more than six years last past has been and now is a resident and citizen of the state of Washington, and for a long time prior to the 17th day of April, 1908, was the owner of the southeast quarter (S.E. ¼) of section nineteen (19), township twenty-five (25), range forty-five (45) E.W.M. in the county of Spokane, through which the natural outlet of said Saltese lake runs, as more particularly appears from a plat of said lake, a copy of which is hereto attached and marked 'Exhibit A,' and ever since said date, plaintiff has been and now is the owner of a strip of land one hundred feet wide running through the property above described, which strip of land was reserved by plaintiff for right-of-way for a ditch to convey water from said Saltese lake and its natural outlet onto lands lying below said right of way. That on, to wit, the 19th day of February, 1908, this plaintiff, *pursuant to the laws of the state of Washington, duly appropriated the waters of said lake and stream flowing therefrom to the extent 200 cubic feet of water per second of time, duly appropriated the right to use of said lake as a storage basin for water, to be so used by him for irrigation, and duly caused a good and sufficient notice of said appropriation to be posted as required by law and thereafter to be recorded in*

*the office of the county auditor of Spokane county, as required by law.*

"(3)  That thereafter, and on to wit the 28th day of March, 1908, in action wherein the above named defendants, together with Agnes Morrison, wife of Peter Morrison, and Fanny C. Pugh, wife of Felix M. Pugh, were plaintiffs, and this plaintiff was defendant, by its order duly made, enjoined and restrained this plaintiff from constructing a dam across said outlet for the purpose of availing himself of the rights acquired by such appropriation, and from proceeding with the work required by law in order to hold and enjoy the rights so acquired.

"(4)  That thereafter said court, on the motion and at the instance of said plaintiffs in said cause, two of whom are defendants in this cause, by its order made and entered on the 22d day of May, 1909, dismissed said cause on all things and dissolved said injunction.  That on to wit the 15th day of April, 1909, this plaintiff, in pursuance of the statute in said case made and provided, and in compliance with the laws of the state of Washington, relative to the appropriation of water for irrigation and other purposes, proceeded to construct a dam across the outlet of said lake and to fill up the ditch which these defendants and others had unlawfully dug and are unlawfully maintaining; the object, purpose and effect of which ditch is to drain said lake and destroy its value for the purpose of irrigation *and uses for which it has been set aside and dedicated by the act of Congress heretofore referred to, and laws of the territory and state of Washington.*

"(5)  That while the plaintiff was so engaged in constructing said dam and carrying out the purpose for which he had appropriated the waters of said stream and lake, these defendants, together with a large number of men, all of whom plaintiff is advised and believes were the agents and servants of said defendants, with force and arms destroyed plaintiff's said dam and all the work he had done in pursuance of law for appropriation of the waters of said lake, and threatened by force to prevent plaintiff from continuing his improvements or the work required by law to preserve his appropriation of water, or to construct said dam or any dam across the outlet of said lake, and prevent him from doing

any act to preserve and protect the rights acquired by him by virtue of such appropriation.

"(6)   That the rights acquired by the plaintiff by right of such appropriation are of great value, and when completed, will enable him to carry water upon a very large area, to wit, about one thousand acres of land lying below said dam and ditch, which land is now of little value and when supplied with water from plaintiff's ditch, will be of great value."

The parts italicized were stricken on motion, and a demurrer sustained as to the balance.

The intervener's second amended complaint in intervention, omitting caption and prayer, is as follows:

"(1)   That Saltese lake is a nonnavigable body of fresh water situated in townships 24-25 north, range 45 east of the Willamette Meridian in Spokane county, Washington, and containing about fourteen hundred acres, as surveyed and meandered by the government of the United States during the years 1877-78.

"(2)   The state of Washington, the intervener herein, is the owner and entitled to the possession of the waters and bed of said lake as it existed at the time of the survey thereof, and has been the owner and entitled to the possession of said premises ever since the admission of said state into the Union on November 11, 1889.

"(3)   That the plaintiff and defendants herein are wrongfully asserting some right, title and interest in and to the bed of said lake, and are wrongfully withholding the same from the intervener herein."

The original complaint in intervention contained no allegation as to the character of the lake, whether navigable or unnavigable. On motion to make more specific in that respect, the intervener elected to plead the actual fact that the lake was not navigable.

The claim that this was the initial error, we shall dispose of at once. It is manifest that, as a matter of fact, the lake was either navigable or not navigable. Even if, as asserted, the intervener might claim the bed of the lake because of either condition, it could not, at the same time, claim be-

cause of both. The two conditions could not exist at the same time. Both, therefore, could not be pleaded and asserted as a basis of title at the same time. The truth of one would establish the falsity of the other. To plead both would violate the rule of the code that the complaint shall contain a plain and concise statement of *facts* constituting a cause of action. Pleading contradictory *facts* can hardly be termed a plain and concise statement of any fact, though either fact might support the action. *Seattle Nat. Bank v. Carter*, 13 Wash. 281, 43 Pac. 331, 48 L. R. A. 177. It is obvious that this is true whether the allegation be express that the lake was both navigable and unnavigable, or inferential to the same effect, or uncertain in failing to allege either. The defendants, therefore, were entitled to a plain and concise statement of the one condition or the other. The case of *Hutchinson v. Mt. Vernon Water & Power Co.*, 49 Wash. 469, 95 Pac. 1023, chiefly relied upon by intervener in this connection, is inapposite. There the facts in support of the plaintiff's title as pleaded were three: riparian ownership, appropriation and contract. All were specifically pleaded. All could exist at the same time as actual facts cumulating to the one result—title in the plaintiff. Neither tended to contradict the other. In such a case, it was, of course, error to compel an election. It would be unreasonable to require an abandonment of any facts tending to the same result and wholly consistent with the other facts pleaded.

The one dominant question in this case is this: Who owns the bed of Saltese lake, the state of Washington, the United States, or the proprietors of littoral lands? Our statute, Rem. & Bal. Code, § 143 (P. C. 81 § 1), declares:

"The common law, so far as not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state."

This court, early in its history, construed this declaration to mean that, in the absence of governing statutory provisions, the courts will endeavor to administer justice according to the promptings of reason and common sense, which are the cardinal principles of the common law; but will not blindly follow the decisions of the English courts as to what is the common law without inquiry as to their reasoning and application to circumstances. *Sayward v. Carlson,* 1 Wash. 29, 23 Pac. 830. Applying this statute so construed, it seems to us that the state's claim of title to the bed of this lake is foreclosed by our own decisions.

In *Benton v. Johncox,* 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, the contest was between the common law rights of riparian proprietors on an unnavigable stream and right of appropriation by nonriparian owners made subsequent to the occupancy of the riparian lands, with intent by the riparian settlers to acquire title from the government. It was held that common law riparian rights are initiated with such occupancy and prevail over subsequent nonriparian appropriation, notwithstanding the act of 1890 relating to and recognizing the right of appropriation by nonriparian owners for irrigation and mining. Rem. & Bal. Code, § 6325 (P. C. 171 § 227). It was also held that, under the statute making the common law the rule of decision in the courts of this state, Rem. & Bal. Code, § 143 (P. C. 81 § 1), the right of the riparian owner to the natural flow of the stream by or across his land in the accustomed channel, except as diminished by prior appropriations, is an incident to his estate, not as a mere easement, but as a part of the estate. To the same effect, see *Still v. Palouse Irrigation & Power Co.,* 64 Wash. 606, 117 Pac. 466.

In *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178, this court, because of the same statute making the common law the rule of decision, held that the title to the bed of an unnavigable, unmeandered stream is in the adjacent riparian proprietors, as this is not

inconsistent with either Federal or state constitution or laws, nor incompatible with the institutions and condition of society in this state. The court said:

"The title to the land under all the navigable waters of this state passed from the sovereignty of the United States to the sovereignty of the state upon the admission of the state to the Union; but, under the well established law of the land, the title to the land under the nonnavigable waters passes from the United States to the grantee of the upland bounding on such nonnavigable waters as an incident to such grant; and, although at the common law the test of the navigability is the ebb and flow of the tide, yet, especially in this country, it is held that the rivers and streams above the ebb and flow of the tide, which have sufficient capacity for useful navigation, are public rivers and subject to the same general rights which the public possesses in navigable waters."

See, to the same effect, *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *Nesalhous v. Walker,* 45 Wash. 621, 88 Pac. 1032. Each of these cases involved unnavigable streams. The appellant contends that the rule they announce is merely the common law rule of boundary, and that it would not apply to a shallow, unnavigable lake.

In *Madson v. Spokane Valley Land & Water Co.,* 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 5, the main lake, Liberty lake, was navigable. The arm of the lake, which the irrigation company sought to drain and to which the land of the respondents there was littoral, was not navigable. This circumstance, the court, however, held immaterial, deciding the question solely upon the fact that the respondents had acquired vested rights by patent from the United States prior to the adoption of the constitution, while the irrigation act, Laws of 1899, p. 261 (Rem. & Bal. Code, § 6325; P. C. 171 § 227), under which the appellant was organized, provides that the right of a nonriparian owner to take water for irrigation is "subject to rights existing at the time of the adoption of the constitution of this state," citing *New*

18—81 WASH.

*Whatcom v. Fairhaven Land Co.*, 24 Wash. 493, 64 Pac. 735, 54 L. R. A. 190. Apparently the exact question here involved, namely, who owned the bed of the arm or lagoon, was neither considered nor decided. The language of the decision, in terms probably broader than intended, was to the effect that the owner of land littoral to either a navigable or unnavigable lake, whose title was initiated prior to the adoption of the state constitution, has the right to have his land laved by the water in its natural state, which right cannot be invaded without condemnation and compensation. Since, however, the water there involved was unnavigable, that case as an authority should be confined to unnavigable waters, and is so confined by the recent decisions of this court in *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, 70 Wash. 442, 126 Pac. 945.

In *State ex rel. Liberty Lake Irrigation Co. v. Superior Court*, 47 Wash. 310, 91 Pac. 968, the irrigation company sought to condemn "a right of way for a ditch and the riparian or littoral rights of relators to the waters of a non-navigable arm of Liberty lake." The waters involved were those of the same arm of the lake involved in the *Madson* case. It was urged that the littoral owners, by the act of Congress of March 3, 1877, the desert land act, had no littoral rights because that act antedated their patent from the government. The court refused to construe that act, holding that in any event our statute, Rem. & Bal. Code, § 6382 (P. C. 271 § 279), placed the duty on the state to provide how "the appropriation and use of the public," mentioned in the statute, should be exercised. The court, following and quoting *State ex rel. Kettle Falls etc. Co. v. Superior Court*, 46 Wash. 500, 90 Pac. 650, said:

"Under Bal. Code, § 4156 [Rem. & Bal. Code, § 6382] (P. C. § 5871), the ordinary abutting owner must submit to the condemnation of his riparian rights to the natural flow of the water as at common law, with the limitation, however,

that water 'that is used by said person himself for irrigation, or that is needed for that purpose by any such person' may not be condemned."

concluding:

"We think it comports with the general policy of the state to hold that this statute contemplated the use by the abutting owner of the water necessary for his present needs and for those that accrue as he in good faith proceeds with reasonable dispatch to construct the means for applying the water to his adjacent arid land."

It was held that the order of appropriation by the condemning company should except sufficient water to meet those purposes.

In *Spokane Valley Land & Water Co. v. Jones & Co.*, 53 Wash. 37, 101 Pac. 515, the same unnavigable arm of Liberty lake was involved. The facts are fully stated in the opinion. It appears that the arm of the lake was, at low water, dry at its intake, so that it formed at such times a separate, unnavigable lake. The water company and its predecessors in interest had constructed a dam at this intake, and a canal and laterals for the purpose of carrying water for irrigating nonlittoral land. The main canal was cut through what was formerly the bed of the arm, thus draining it. The water company brought the action, to condemn a strip of land $37\frac{1}{2}$ feet wide on either side of the center of this canal, and to condemn whatever littoral or riparian rights the littoral owners had. The trial court enjoined interference with the natural level of the waters of the lagoon, and ordered the removal of the dam and head gates. This court, though again refusing to pass upon the desert land act of March 3, 1877, reversed the lower court on the ground that, though the statute, Rem. & Bal. Code, § 6382, *supra*, inhibits condemnation of rights of riparian or littoral owners to water needed for irrigation, it establishes the policy of this state for a joint user where riparian rights are sought to be taken by condemnation.

In *State ex rel. Ham, Yearsley & Ryrie v. Superior Court*, *supra*, we held that a riparian upland owner of land bordering a navigable lake has no common law riparian or littoral rights as against the state or one who appropriates water in pursuance of the law of the state, for the reason that by § 1 of art. 17 of the state constitution, the state has asserted ownership in the beds and shores of such navigable waters; this regardless of the fact that the title of the littoral owners was initiated prior to the adoption of the state constitution. In that case, it was also held that the statute, Rem. & Bal. Code, §§ 6325, 6326, 6338 (P. C. 171 §§ 227, 229; 271 § 185), was not intended to give to the bordering upland owner any preference or different right to take water from navigable streams or lakes from those accorded to other persons by appropriation. As among all members of the public, the right to use such waters is determined solely by priority of appropriation. Since this case was rested squarely upon the state's ownership of the beds and shores of navigable lakes, and is distinguished from the *Madson* case, *supra*, solely on that ground, it follows that this case, with the *Madson* case, and, we may add, with the other Liberty lake lagoon cases, necessarily implies that the ownership of the beds of unnavigable lakes is not in the state. None of these decisions expressly marks a difference either in the riparian rights on unnavigable streams and unnavigable lakes, or in the rule of ownership of the beds of unnavigable streams and unnavigable lakes. They simply leave that question untouched except by inference. It is true, in the two later Liberty lake lagoon cases, the condemnation sought was apparently not only for water rights, but also for a right of way across the drained bed of the lagoon. The ownership of this bed by the littoral proprietors seems to have been conceded by the parties and to have been unquestioned by the court. At any rate, in neither of these cases, did the court decide this question. The ownership of unnavigable, meandered lakes still remains an open question

in this state and is undecided further than, as we have seen, the reasoning in the *Ham, Yearsley & Ryrie* case, and the conclusion there reached necessarily eliminates all ownership in the state. In all of the other cases above referred to, the contests were between rival claimants of water; not, as here, between claimants of the land and a claimant of the water. The title to the land or bed of the lake as an element in the controversy seems to have been either conceded as in the littoral owners or overlooked.

The intervener asserts the broad proposition that a sovereign state, by virtue of its sovereignty, is the owner of everything within its borders which it has not expressly granted or waived its title to. It is argued that the title to the water and bed of the lake, being in the United States prior to the admission of the state into the Union, and not having been reserved by the United States nor relinquished to the United States by the state upon its admission, the title must be in the state. This argument is unsound for two reasons. In the first place, it proves too much. It would place the title to the beds and waters of unnavigable streams, as well as of unnavigable lakes, in the state. But, as we have seen, this court has steadily adhered to the view that, in the absence of reservation, a United States patent of land riparian to an unnavigable stream carries title to the center of the stream. *Benton v. Johncox, Griffith v. Holman,* and *Watkins v. Dorris, supra.* The claim that this is but a doctrine of "boundary" makes no difference on the question of original title as between the state and the United States, since a mere rule of boundary could not divest the state's title if it had one, nor operate as a relinquishment of title by the state except in a patent issuing from the state. *Hardin v. Shedd,* 190 U. S. 508. It seems more consonant with reason to say that the beds of unnavigable streams and lakes on public lands were a part of the public domain of the United States and, as such, disclaimed, like other unappropriated public lands within its borders, by the state on its admission to the Union.

State Constitution, article 26. In the second place, the United States did reserve to itself the beds of unnavigable streams and lakes in the Congressional act of February 22, 1889, known as the "Enabling Act." 25 U. S. Stat. at L., p. 681, pursuant to which this state came into the Union. That act, in § 17, specifies the lands which shall pass to the state of Washington upon its admission into the Union. It does not include, either expressly or by any shadow of implication, nor even refer to, unnavigable lakes. It does, however, expressly exclude all swamp and overflow lands. It concludes with the provision expressly excluding everything not specifically included, as follows:

"That the states provided for in this act shall not be entitled to any further or other grants of land for any purpose than as expressly provided in this act." 25 U. S. Stat. at L., p. 681.

The state's disclaimer, in article 26 of its constitution, was merely a recognition or acceptance of this condition of the enabling act. The observation of this court relative to the disclaimer of patented tide, swamp and overflow lands, found in § 2 of art. 17 of the state constitution, applies with equal force to the disclaimer found in art. 26. It "disclaims all title." "The state merely asserts nothing." *Baer v. Moran Bros. Co.*, 2 Wash. 608, 615, 27 Pac. 470. Every consideration induces the conclusion that the state does not own, and never owned, the bed of Saltese lake.

But it does not follow that, because the state does not own the land included within the meander lines of this unnavigable lake, it cannot object to the draining of the lake by an intruder. If the bed of the lake is owned by the littoral proprietors, they may drain it if they please, so long as unappropriated by a prior appropriation and uncondemned. They would merely be reclaiming their own land. If, however, it still belongs to the United States, the state of Washington has, by virtue of its sovereignty, an interest suf-

ficient to warrant its maintaining an action against an intruder without title.

"It is enough to say that by virtue of its sovereignty the state of Iowa has an interest in the condition of the lake sufficient to entitle it to maintain this suit against an intruder without title, whether the state owns the bed or not. This principle has been affirmed and acted on by the court so recently that it does not require further argument here. *Georgia v. Tennessee Copper Co.*, 206 U. S. 230, 237; *Hudson Water Co. v. McCarter*, 209 U. S. 349, 356. See, also, *Kansas v. Colorado*, 206 U. S. 46, 93; *McGilvra v. Ross*, 215 U. S. 70, 79." *Marshall Dental Manufacturing Co. v. State of Iowa*, 226 U. S. 460, 462.

Though the state does not own the bed of the lake, we must still address ourselves to the question, who, as between the United States and its patentees of the bordering lands, does own it? It is not alleged, either in the plaintiff's complaint or in the complaint of the state in intervention, that the defendants own the lands bordering the lake under patents from the United States, but the entire argument on both sides proceeds upon the assumption that they do. We shall also proceed upon the same assumption. It is alleged, and the demurrers admit it, that the lake was surveyed and meandered by the United States government during the years 1877 and 1878. The law is well settled that grants of the government of the United States of lands bordering on streams and other waters, without reservation or restriction, are to be construed as to their effect according to the law of the state in which the lands lie. *Hardin v. Jordan*, 140 U. S. 371. More specifically stating the same rule as applied to both unnavigable and navigable waters, the supreme court of the United States has said:

"When land is conveyed by the United States bounded on a nonnavigable lake belonging to it, the grounds for the decision must be quite different from the considerations affecting a conveyance of land bounded on navigable water. In the latter case, the land under the water does not belong to the United States, but has passed to the state by its admis-

sion to the Union. Nevertheless it has become established almost without argument that in the former case as in the latter the effect of the grant on the title to adjoining submerged land will be determined by the law of the state where the land lies. In the case of land bounded on a nonnavigable lake, the United States assumes the position of a private owner subject to the general law of the state, so far as its conveyances are concerned. *Hardin v. Jordan*, 140 U. S. 371; *Shively v. Bowlby*, 152 U. S. 1, 45; *Grand Rapids & Indiana R. R. Co. v. Butler*, 159 U. S. 87, 90, 93; *St. Anthony Falls Water Power Co. v. St. Paul Water Commissioners*, 168 U. S. 349, 363. (Such cases are not affected by Rev. Stat. §§ 2476, 5251.) When land under navigable water passes to the riparian proprietor, along with the grant of the shore by the United States, it does not pass by force of the grant alone, because the United States does not own it, but it passes by force of the declaration of the state which does own it that it is attached to the shore. The rule as to conveyances bounded on nonnavigable lakes does not mean that the land under such water also passed to the state on its admission or otherwise, apart from the Swamp Land Act, but is simply a convenient, possibly the most convenient, way of determining the effect of a grant. We are particular in calling attention to this difference, because we fear that there has been some misapprehension with regard to the point." *Hardin v. Shedd*, 190 U. S. 508, 519.

It is clear, therefore, that the effect of the patents from the United States to the littoral proprietors of the land bordering this lake, i. e., whether they carry title to any part of the bed of the lake, is one for our determination, which determination the supreme Federal court has announced it will follow. It is equally clear, from its own decisions, that the rulings of the United States supreme court, much less of the department of the interior, however persuasive, are of no binding force upon this court touching the question here involved. Even where it has once declared the effect of a grant, and subsequent decisions of the state courts declare the effect differently, the supreme court will change its ruling and follow the rule of the state court as to the effect of

grants within the state's borders. *Hardin v. Jordan* and *Hardin v. Shedd, supra.* In the first of these cases, the supreme court, assuming that the rule of the common law was the law of Illinois, held that the littoral proprietor, by his grant from the United States, took to the center of the lake. In the second, following subsequent decisions of the supreme court of Illinois to the effect that the grant extended only to the water line, the supreme court of the United States reversed its former decision in that respect. It must be noted, however, that the later decision in *Hardin v. Shedd* does not overrule or modify the decision in *Hardin v. Jordan* as to what is the rule at common law. There being no direct statutory or constitutional declaration touching the extent of a grant bordering unnavigable water, we must resort to the rule of the common law and apply it to this question, as we have done to grants bordering unnavigable streams, so far as compatible with our institutions and the needs of our people (Rem. & Bal. Code, § 143; P. C. 81 § 1) ; and so far as uncontrolled by our own decisions. The rule of the common law as authoritatively declared in England is found in *Bristow v. Cormican,* 3 App. Cas. 641. The lake there in question was Lough Neagh, in the north of Ireland, from fourteen to sixteen miles long, and six to eight miles wide, the longest inland lake in the United Kingdom, and navigable in fact. The concrete question involved the right of fishing in the lake under grant from the crown. The determinative question was whether this lake was the property of the crown or of the littoral proprietors. Lord Blackburn states the gist of the decision as follows:

"The property in the soil of the sea and of estuaries and of rivers in which the tide ebbs and flows is *prima facie* of common right vested in the Crown, but the property of dry land is not of common right in the Crown. It is clearly and uniformly laid down in our books, that where the soil is covered by the water forming a river in which the tide does not flow, the soil does of common right belong to the owners of the adjoining land; and there is no case or book of author-

ity to show that the Crown is of common right entitled to land covered by water, where the water is not running water forming a river, but still water forming a lake . . . It is, however, necessary to decide whether the Crown has of common right a *prima facie* title to the soil of a lake; I think it has not. I know of no authority for saying it has, and I see no reason why it should have it." *Bristow v. Cormican,* 3 App. Cas. 641, 665-667.

It seems clear that the proprietorship of the sovereign is there determined by a conventional navigability going with the ebb and flow of the tide, not by the fact of actual navigability. The supreme court of the United States, in *Hardin v. Jordan, supra,* after quoting the above language from *Bristow v. Cormican,* cites and quotes from many American decisions, notably *Smith v. Rochester,* 92 N. Y. 463, and *Cobb v. Davenport,* 32 N. J. L. 369, from the latter adopting the following:

"By the common law, all waters are divided into public waters and private waters. In the former the proprietorship is in the sovereign; in the latter in the individual proprietor. The title of the sovereign being in trust for the benefit of the public—the use, which includes the right of fishing and of navigation, is common. The title of the individual being personal in him, is exclusive—subject only to a servitude to the public for purposes of navigation, if the waters are navigable in fact . . . And all the cases in which waters above the ebb and flow of the tide, such as great inland lakes and the larger rivers of the country, are held to be public in any other sense than as being subjected to a servitude to the public for purposes of navigation, are confessedly a departure from the common law."

The court adds:

"But we forbear to quote further the reasonings of the cases. There are many more to the same effect, all going to demonstrate what the rule of the common law is with regard to the ownership of the beds of inland lakes, not of such size or importance as to be classed with the great inland navigable lakes and rivers of the country. We need not depend upon the English case of *Bristow v. Cormican* alone, great

as its authority necessarily is; but are surrounded by a cloud of witnesses in our own country whose testimony is in harmony with that decision."

This goes much farther than necessary to go to establish a private ownership in the bed of the lake here in question, and much farther than the enabling act, our constitution and our decision in the *Ham, Yearsley & Ryrie* case would permit us to go. Moses lake, involved in that case, is a small lake, but actually navigable. It is not an open question in this state that actual navigability is determinative of the ownership in the state of the shores and beds of rivers and lakes. The decision in *Hardin v. Jordan, supra,* however, does emphasize the fact that if we follow the common law as declared by the supreme court of the United States so far as we may without conflict with our constitution and our own decisions, we must hold that littoral proprietors on unnavigable lakes in this state take title to the bed to the center of the lake. The rule laid down in *Hardin v. Jordan* has been followed by the department of the interior and by many courts with regard to the passing of the beds of unnavigable lakes by force of the grant of the littoral lands. *F. M. Pugh et al.,* 14 Land Decisions, 274; *Grand Rapids Ice & Coal Co. v. South Grand Rapids Ice & Coal Co.,* 102 Mich. 227, 60 N. W. 681, 47 Am. St. 516, 25 L. R. A. 815; *Rice v. Ruddiman,* 10 Mich. 125; *Gouverneur v. National Ice Co.,* 134 N. Y. 355, 31 N. E. 865, 30 Am. St. 669, 18 L. R. A. 695; *Lamprey v. Minnesota,* 52 Minn. 181, 53 N. W. 1139, 38 Am. St. 541, 18 L. R. A. 670; *Poynter v. Chipman,* 8 Utah 442, 32 Pac. 690; *Olson v. Huntamer,* 6 S. D. 364, 61 N. W. 479; *Scheifert v. Briegel,* 90 Minn. 125, 96 N. W. 44, 125 Am. St. 135, 63 L. R. A. 296; *Lembeck v. Nye,* 47 Ohio St. 336, 24 N. E. 686, 21 Am. St. 828, 8 L. R. A. 578; *Ridgway v. Ludlow,* 58 Ind. 248. The just and equitable result of the rule, as it seems to us, is clearly stated by the supreme court of the United States in *Mitchell v. Smale,* 140 U. S. 407, 412, 413, as follows:

"We think it a great hardship, and one not to be endured, for the government officers to make new surveys and grants of the beds of such lakes after selling and granting the lands bordering thereon, or represented so to be. It is nothing more or less than taking from the first grantee a most valuable, and often *the* most valuable part of his grant. Plenty of speculators will always be found, as such property increases in value, to enter it and deprive the proper owner of its enjoyment, and to place such persons in possession under a new survey and grant, and put the original grantee of the adjoining property to his action of ejectment and plenary proof of his own title, is a cause of vexatious litigation which ought not to be created or sanctioned."

It will be noted that in all of the cases, the fact that an unnavigable lake or pond has been meandered by the government is held immaterial, since this is merely for the purpose of determining the quantity of land for which the purchaser must pay, and not for the purpose of limiting to the meander line the title of the grantee from the United States. It is true that many other American authorities hold that the rule that a grantee of land bordering an unnavigable stream carries title to the thread of the stream does not apply to grants of lands bordering upon lakes and ponds, and that in such cases the title extends only to the water line, applying the same rule of boundary to navigable and unnavigable lakes. *Fuller v. Shedd*, 161 Ill. 462, 44 N. E. 286, 52 Am. St. 380, 33 L. R. A. 146; *Trustees v. Schroll*, 120 Ill. 509, 12 N. E. 243, 60 Am. Rep. 575; *Delaplaine v. Chicago & N. W. R. Co.*, 42 Wis. 214, 24 Am. Rep. 386; *Boorman v. Sunnuchs*, 42 Wis. 233; *Diedrich v. Northwestern Union R. Co.*, 42 Wis. 248, 24 Am. Rep. 399; *Noyes v. Collins*, 92 Iowa 566, 61 N. W. 250, 54 Am. St. 571, 26 L. R. A. 609; *Carr v. Moore*, 119 Iowa 152, 93 N. W. 52, 97 Am. St. 292; *Fletcher v. Phelps*, 28 Vt. 257; *Kanouse v. Slockbower*, 48 N. J. Eq. 42, 21 Atl. 197; *Indiana v. Milk*, 11 Fed. 389. The decisions of the courts of Massachusetts, Maine and New Hampshire, to the effect that the title of a littoral proprie-

tor on a lake or pond extends only to the water's edge, we regard as negligible. The Massachusetts doctrine rests upon ordinances adopted by the Colony of Massachusetts in 1641 and 1647. *Paine v. Woods,* 108 Mass. 160; *Watuppa Reservoir Co. v. Fall River,* 147 Mass. 548, 18 N. E. 465, 1 L. R. A. 466. The other two states were originally parts of that colony and seem to have followed the Massachusetts decisions.

In *Indiana v. Milk,* which is probably the most persuasive of the cases holding contrary to the views here expressed, the court uses the following language:

"Nonnavigable streams are usually narrow, and the lines of riparian owners can be extended into them at right angles without interference or confusion, and without serious injustice to any one. It was therefore natural, when such streams were called for as boundaries, to hold that the real line between opposite shore owners was the thread of the current. The rights of the riparian proprietors in the bed of the stream, and in the stream itself, were thus clearly defined. But when this rule is attempted to be applied to lakes and ponds, practical difficulties are encountered. They have no current, and, being more or less circular, it would hardly be possible to run the boundary lines beyond the water's edge, so as to define the rights of shore owners in the beds. Beaver lake is seven and a half miles east and west, and less than five miles north and south. Extending the side and end lines into the lake, there being no current, when would they meet? This rule is applicable, if at all, whether there be one or more riparian proprietors. I do not think the mere proprietorship of the surrounding lands will, in all cases, give ownership to the beds of natural nonnavigable lakes and ponds, regardless of their size. It would be unfair and unjust to allow a party to claim and hold against his grantor the bed of a lake containing thousands of acres, solely on the ground that he had bought and paid for the small surrounding fractional tracts—the mere rim."

The supreme court of the United States in *Hardin v. Jordan, supra,* quotes and fully answers this argument as follows:

"We do not think that this argument *ab inconvenienti* is sufficient to justify an abandonment of the rules of the common law, which, as we have shown, have been adopted in Illinois as the law of the land. It is too much like judicial legislation. It is as much as to say: 'We think the common law might be improved, and we will, therefore, improve it.' As to the supposed difficulty or inconvenience in applying the law, it is no greater than that which occurs on any bay or incurved shore, even of a large river, in adjusting the outgoing boundary lines between adjoining proprietors over the submerged bottoms of flats lying in front of their riparian lands. Just and equitable rules have been adopted for settling the mutual rights of parties in such cases. Where a lake is very long in comparison with its width, the method applied to rivers and streams would probably be most suitable for adjusting riparian rights in the lake bottom along its sides, and the use of converging lines would only be required at its two ends. But whatever mode of determining the outgoing lines, as between adjoining owners, should be adopted in special cases (which may be left for determination when they arise) there can be no difficulty in the present case as between the plaintiff and the defendant. The latter is not an adjoining owner. The controversy here is between a riparian owner and a party claiming the land under water in front of him; and as between them, we think there is no question as to the riparian owner's right."

We hold that the common law, as declared by the supreme court of the United States, so far as all unnavigable waters, whether in streams or lakes, are concerned, that is to say, waters not actually navigable, is the common law and rule of decision in this state. We know of nothing in the character of our institutions or in the state of our society militating against its application to all such waters. The declaration in our constitution, § 1 of article 21, that:

"The use of the waters of the state for irrigation, mining and manufacturing purposes shall be deemed a public use"

was never intended to destroy riparian rights in unnavigable waters. If it were, it would as effectually destroy those rights in unnavigable streams as in unnavigable lakes. It

marks no distinction between the two. Yet, as we have seen, this court has repeatedly declared that the title of the riparian owner on an unnavigable stream extends to the center of the stream. This section of the constitution was merely intended to remove any doubt as to the power of the legislature to authorize the taking of such riparian property rights for the purpose mentioned through the exercise of the power of eminent domain. Nor do we find anything in the act of 1890 (Laws 1890, p. 706 *et seq.*) not in consonance with this view. On the contrary, as pointed out in *Benton v. Johncox, supra,* the legislature in that act recognized such riparian rights. It is there said:

"Nor did the legislature disregard the rights of riparian owners in the general act of 1890, relating to appropriation of water for irrigation. 1 Hill's Code, § 1718 *et seq.* On the contrary, §§ 1761 and 1774 of that act especially recognize the existence of riparian rights, and we do not see anything in that statute, or the subsequent act of 1891 (Laws 1891, p. 327) evincing an intention on the part of the legislature to disregard such rights."

And again, in all of the Liberty lake lagoon cases above referred to, littoral rights, in the waters, at least of unnavigable lakes, are recognized, and it is, in effect, held that they are preserved to the extent needed for irrigation of the littoral lands, even against condemnation, by § 57 of the act of 1890 (Rem. & Bal. Code, § 6382; P. C. 271 § 279).

Nor do we find anything in the Federal act of March 3, 1877, when limited to what we conceive to be its only purpose, abrogating the common law rule touching riparian and littoral rights in unnavigable waters, though the Oregon cases mainly relied upon by the state, *Williams v. Altnow,* 51 Ore. 275, 95 Pac. 200, 97 Pac. 539; and *Hough v. Porter,* 51 Ore. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728, present a very strong argument that the act should be so construed. These cases were cited and considered by this court in *Still v. Palouse Irrigation & Power Co.,* 64 Wash. 606, 117 Pac. 466. We then declined to follow them, saying:

"The act itself manifestly relates only to the reclamation of desert lands and confines the use of the water to the amount 'actually appropriated and necessarily used for the purpose of irrigation and reclamation'; such right to be determined by *bona fide* prior appropriation. As to such lands, Congress recognized and assented to the appropriation of water in contravention of the common law right of the lower riparian owner to insist on the continuous flow of the stream. This court has always recognized the doctrine of prior appropriation of water on public lands as superior to all other claims, while it has also recognized the common law right of the riparian owner against all but *bona fide* prior appropriators."

On careful reconsideration, we decline to modify that holding. The trial court committed no error in striking from the complaint of the plaintiff the allegations relative to this act.

This case has given us much difficulty. We are satisfied, however, that it must be soundly held that, under the allegations of the complaint and complaint in intervention, title to the bed of this unnavigable lake vested in the patentees of the bordering lands, and that neither the state nor the United States now has any title thereto. It follows that the court committed no error in sustaining the demurrers to the complaint and the complaint in intervention.

Of course, we do not decide what would be the result should it transpire as an actual fact that the land included within the meander lines of Saltese lake are not, and never were, in fact, the bed of a lake. That question is not before us. It was presented touching this very land in *Gauthier v. Morrison*, 62 Wash. 572, 114 Pac. 501. The complaint in that case alleged, in substance, that the land included within the meander lines of this lake was wrongfully, erroneously, and fraudulently designated as a lake. A demurrer was sustained to the complaint, and the decision was affirmed by this court. On writ of error, the supreme court of the United States reversed this court, holding that the complaint stated a cause

of action, and remanded the cause for trial.  In the case before us, no such facts appear; no such allegation is made either in the complaint or in the complaint in intervention.

The judgment is affirmed.

CROW, C. J., GOSE, MAIN, and CHADWICK, JJ., concur.